## COLLINS v. STATE OF INDIANA.

[No. 23,812.  Filed June 2, 1921.  Rehearing denied May 12, 1922.]

1. TROVER AND POSSESSION.— *Demand.*— *Pleading and Proof.*— In civil pleading, when conversion is pleaded, no demand need be pleaded, as at the trial, if a conversion is proved, no demand need be proved. p. 98.

2. INDICTMENT AND INFORMATION.—*Certainty.*—No greater certainty is required in criminal than in civil pleadings. p. 98.

3. EMBEZZLEMENT.— *Demand.*— *Failure of Clerk of Circuit Court to Pay over Funds to Successor.*—*Statutes.*—To sustain a judgment of conviction for embezzlement, under §2284 Burns 1914, Acts 1905 p. 671, §391, against a clerk of a circuit court who fails to pay over money in his hands as clerk to his successor in office, as required by such statute, it is not necessary to show a demand on him for such funds by his successor, and his refusal to pay over. p. 98.

4. EMBEZZLEMENT.—*Indictment.*—*Requisites.*—*Allegation of Demand and Refusal.*—It is not necessary to allege in an indictment for embezzlement a demand and a refusal by the accused to pay over the money or property alleged to have been embezzled, unless the statute creating the offense makes a demand and refusal essential elements thereof. p. 102.

5. CRIMINAL LAW.— *Intent.*— *Evidence.*— *Admissibility.*— *Other Offenses.*—*Flight.*—In a prosecution of the clerk of a circuit court for embezzlement of funds in his hands as clerk, evidence given by accountants tending to show a former misappropriation of public funds by defendant was admissible to show criminal intent, together with evidence that he had not been seen at his office for more than a week before his attorney filed his resignation, and that he was arrested in a distant state. p. 103.

6. CONSTITUTIONAL LAW.— *Embezzlement by Clerk of Circuit Court.*—*Statute.*—*Constitutionality.*—Section 2284 Burns 1914, Acts 1905 p. 584, §391, defining as embezzlement the failure of any clerk of any circuit court, etc., to pay over funds held by him in his official capacity to his successor in office, is not violative of the federal Constitution, amendment fourteen. p. 103.

From Rush Circuit Court; *John W. Craig,* Special Judge.

Prosecution by the State of Indiana against Cecil B.

Collins.   From a judgment of conviction, the defendant appeals.   *Affirmed.*

*Young & Young* and *Meyers, Gates & Ralston,* for appellant.

*U. S. Lesh,* Attorney-General, *Edward M. White,* and *George L. Folan,* for the state.

TRAVIS, J.—This is a criminal prosecution upon an indictment which charges embezzlement by the clerk of the Shelby Circuit Court, in violation of §391, Acts 1905 p. 671, §2284 Burns 1914.

The facts of the case are best set forth in the indictment which is in two counts as follows, except the formal part to wit:—

"The Grand jurors of Shelby County, in the State of Indiana, good and lawful men, duly and legally impanneled charged and sworn to inquire into felonies, and certain misdemeanors in and for the body of said County of Shelby in the name and by the authority of the State of Indiana, on their oaths present that on the third day of November, A. D. 1914, Cecil B. Collins was elected Clerk of the Circuit Court of Shelby County, Indiana, for the term of four years, ending on the first day of January, A. D., 1919; that the said Cecil B. Collins, being duly commissioned gave bond and duly qualified and entered upon the discharge of the duties of said office aforesaid on the first day of January, A. D., 1915; that the said Cecil B. Collins on the sixth day of March, 1918, signed his written resignation to the Board of County Commissioners of Shelby County, Indiana, and the same was filed with and accepted by the said Board of County Commissioners of Shelby County, Indiana, on the seventh day of March A. D., 1918; that one Gordon Thurston was on the seventh day of March, A. D. 1918, duly and legally appointed to the said office of Clerk of the Circuit Court of Shelby County, Indiana, by the

Board of County Commissioners of said County for the unexpired term aforesaid and was duly commissioned, and on the seventh day of March, A. D. 1918, duly qualified and gave bond, and then and there duly entered upon the discharge of the duties of his said office as the successor of said Cecil B. Collins, the then incumbent, that the said resignation of the said Cecil B. Collins, having been filed with and accepted by said Board of County Commissioners as above stated and the said Cecil B. Collins had surrendered his said office; that at the time of the surrender of said office to the said Gordon Thurston, the said Cecil B. Collins had in his hands as such Clerk of the Circuit Court of Shelby County, the sum of $3,009.22, which had come into his hands by virtue of his said office, and which was then and there due from the said Cecil B. Collins, as Clerk aforesaid, to his successor in office, the said Gordon Thurston; that the said Cecil B. Collins as Clerk aforesaid during the term for which he was elected, on the seventh day of March A. D., 1918, was legally required by the said Gordon Thurston, to account for, deliver and pay over to him the same, all monies, choses in action, and other property which had come into the hands of the said Cecil B. Collins by virtue of his said office and that the said Cecil B. Collins did then and there, unlawfully, feloniously and fraudulently fail and refuse to deliver and pay over the said sum or any part thereof to the said Gordon Thurston, although the said Gordon Thurston was lawfully entitled to receive the same, and was ready and willing to receive said sum of money."
Second Count.

"For further and second count to said indictment the Grand Jurors aforesaid, upon their oaths aforesaid, in the name and by the authority of the State of Indiana, on their oaths present that on the third day of November, A. D. 1914, Cecil B. Collins was elected Clerk of

the Circuit Court of Shelby County, Indiana, for the term of four years, ending on the first day of January, A. D., 1919; that the said Cecil B. Collins, being duly commissioned gave bond and duly qualified and entered upon the discharge of the duties of said office aforesaid, on the first day of January, A. D. 1915, that the said Cecil B. Collins on the sixth day of March, A. D., 1918, signed his written resignation to the Board of County Commissioners of Shelby County, Indiana, and the same was filed and accepted by the said Board of County Commissioners of Shelby County, Indiana, on the seventh day of March, A. D., 1918; that one Gordon Thurston was on the seventh day of March, A. D. (1918), duly and legally appointed to the said office of Clerk of the Circuit Court of Shelby County, Indiana, by the Board of County Commissioners of said County for the unexpired term aforesaid and was duly commissioned, and on the seventh day of March, A. D. 1918, duly qualified and gave bond, and then and there duly entered upon the discharge of the duties of his said office as the successor of said Cecil B. Collins, the then incumbent, that the said resignation of the said Cecil B. Collins having been filed with and accepted by said Board of Commissioners as above stated and the said Cecil B. Collins had surrendered his said office; that at the time of the surrender of said office to the said Gordon Thurston, the said Cecil B. Collins had in his hands as such Clerk of Circuit Court of Shelby County, Indiana, the sum of $4,009.22, which had come into his hands by virtue of his said office, and which was then and there due from the said Cecil B. Collins, as Clerk aforesaid, to his successor in office, the said Gordon Thurston; that the said Cecil B. Collins did then and there, unlawfully, feloniously and fraudulently fail, neglect and refuse to pay over the said sum or any part thereof to the said Gordon Thurston, although the said Gordon Thurston was enti-

tled to receive the same, and was ready and willing to receive said sum of money, contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The trial of the accused upon his plea of not guilty, resulted in a verdict of guilty by the jury, and a sentence of imprisonment, fine and disfranchisement.

The accused filed a motion for a new trial, which was overruled, and he appealed from the judgment of the trial court to this court. The errors pleaded in the appeal are: 1. The trial court erred in overruling the motion to quash the indictment; 2. The facts stated in the first count of the indictment do not constitute a public offense; 3. The facts stated in the second count of the indictment do not constitute a public offense; 4. The trial court erred in overruling the motion by the accused for a new trial.

The motion for a new trial is composed of fifteen specifications of error, but the presentation by appellant in his brief has limited the matters to be reviewed upon this appeal, to the questions:

1. The overruling of the motion to quash the indictment. 2. The refusal by the trial judge to give the peremptory instruction to the jury to acquit, and for erroneously giving the jury instruction No. 11. 3. The act is in violation of the Fourteenth Amendment of the Constitution of the United States.

While the point is made in appellant's brief that the statute is violative of the Fourteenth Amendment to the Federal Constitution, and that the construction heretofore given of the statute by this court, is violative of §13 of the Bill of Rights of Indiana, which will be considered in this opinion, counsel for appellant in an elaborate brief, and by an argument pregnant with legal ingenuity, has contracted the whole case into one point:

That of demand by the successor in office upon the retiring officer for the money belonging to the office, before the indictment of such retiring officer, and the pleading and proof of such demand. Although this court, as well as the Courts of Appeal of nearly all the states of the United States, and of Great Britain, have passed upon the points involved here in a more general manner; the question here with its ramifications is finely drawn, and deserves to be distinguished from the other cases in point.

Much has been written in the opinions of the courts of Great Britain and of the state and federal courts here, about the institution of the crime of embezzlement; in that it was not an offense known to the common law, and hence not entirely amenable to common-law rules of construction. The institution of conversion, of misappropriation, as a crime—named embezzlement—was in a. sense looked upon at first in the United States as another invasion of the constitutional privileges and immunities of its citizens. By legislation first in this state, it was made a crime for a treasurer of a Plank Road Company to convert to his own use money belonging to the company which contained the clause, that a "neglect to pay over on demand * * * Shall be deemed prima facie evidence that he has embezzled * * *," Acts 1852, ch. 80, 1 R. S. 1852 p. 394-399. This act of the legislature seems to be the first direct legislation making the crime of embezzlement, although in former statutes, failure of certain school officials to comply with the law which regulated their administration of the office, together with the proper expenditure of money, subjected such official to a fine.

In 1855 there followed another law which pertained directly to any clerk of a circuit court, which made it a felony for any such clerk to fraudulently fail or re-

fuse at the expiration of his term, or at any time during his term, when legally required by the proper person or authority to account for the funds in his hands. Acts 1855 p. 89, 2 G. & H. 454.

Also in 1855 an act was passed making it a felony for any officer, agent or clerk of the state bank or of its branches who shall embezzle or appropriate the funds, with intent to cheat and defraud. Acts 1855 p. 229. These statutes were specific, and it will be seen that those affected were persons connected with road companies, banks and certain officials including clerks of the circuit courts.

No more legislation upon the subject was enacted until the called session of the legislature in 1865. Undoubtedly this legislature believed the fraudulent conversion of the property of another was not a crime in this state, for it enacted:

"Sec. 2. As there is no law punishing the offense aforesaid, an emergency is hereby declared for the taking effect of this act　*　*　*."

This law included those connected with banking, railroad, insurance, road, telegraph, manufacturing companies, all corporations, traders, merchants, persons, but was silent as to public officials. Acts 1865 p. 204.

In 1871, the legislature in an act relating to fees and salaries, the failure of clerks and certain other officers to pay fees collected into the county treasury, was made embezzlement; so that as yet there was no general statute upon the subject which related to officials. Acts 1871 p. 25.

A new fee and salary act was passed by the legislature in 1873, §39 of which act defined embezzlement of certain officers, including clerks, who failed at the expiration of the term of office to pay over to his successor in office all moneys to whomsoever due. Acts 1873 p. 119. A not very close scrutiny of the several acts, when

viewed chronologically, will disclose a studied change and growth. The last act above cited covered payments to a successor in office. It will also be recognized that the legislatures now began to reckon with former legislation on this crime; especially as shown by its act in 1875 defining the crime of embezzlement. The saving section, §51, provided that the act approved March 1, 1855, which related to defalcation be not repealed. The two acts, in so far as they each relate to clerks, while apparently alike in some particulars are distinct in other essentials. Acts (Spec. Ses.) 1875 p. 31, §45, 1 Davis' Statutes 1876 p. 480.

By Acts 1879 p. 126, a new statute was enacted, which made embezzlement as defined therein, a crime, but it did not name the clerk of any court or any other public officer, thereby apparently recognizing the crime of embezzlement by clerks and other public officers by not including them in this act, yet by section 3 enacted: "All laws upon the subject of embezzlement, now in force are hereby repealed, * * *."

While in this discussion it is unnecessary to inquire whether or not the courts held that the statutes, Acts 1855 p. 89, §1; Acts 1873 p. 119, §39; Acts (Spec. Ses.) 1875 p. 31, §51, which defined embezzlement by clerks of courts were repealed by said §3 of the Act of 1879, it is well to at least suppose that the legislature of 1879 intended to wipe the slate of all former embezzlement acts by the repealing section of this act, for the next legislative session in 1881, by a re-enactment of the criminal offenses, by Acts 1881 p. 182, §42, §1943 R. S. 1881, made the fraudulent failure or refusal of a clerk of any court, at the expiration of his term of office or at any time during such term, when legally required by the proper person or authority, to pay over to such person who may be lawfully entitled thereto, all moneys, a crime of embezzlement. The crime, unknown to the common

law, and of short experience in this state, though enacted and re-enacted at many sessions of the legislature to embrace many different ways of committing the crime, such as defalcations, conversions, appropriations, purloinings, secretings, by this act in 1881 the law took on new form, a crystallization was taking place, possibly in advance of other state laws of the kind, until in 1883, our legislature enacted for the first time the statute relating to the failure of state, county and other officers to pay to their successors in office the funds in their possession as such officers at the expiration of their terms of office. Acts 1883 p. 106, §1. This act was the law for twenty-two years, when in 1905 the legislature re-enacted the laws defining public offenses, and by §391 thereof, Acts 1905 p. 584, §2284 Burns 1914, again defined embezzlement, apparently intending thereby to make it a crime for a public officer to fail to pay over to his successor in office the money in his hands as such officer at the end of the term. This is the section of the public offenses act upon which this prosecution is based.

A careful perusal of these different acts defining embezzlement will disclose that not one of the recent acts in direct language requires that the money shall be paid over to the successor in office only when demanded by such successor so to do. The courts have wrestled with this point, the necessity of demand in prosecutions, about as much as the legislature has with the whole subject of embezzlement.

The crime rests upon conversion. If the with-holding of the money by the outgoing officer did amount to a conversion, at common law there was no crime. The person who was entrusted with money or property, and therefore lawfully possessing it, could defeat the action for recovery thereof up to the time such possession by him was made unlawful, either by his act of commission

with relation to the money or property in disposing of
it, or losing possession in some manner, or by failure of
demand by the owner thereof. *Cooper* v. *Helsabeck*
(1838), 5 Blackf. 14. And the owner then could bring
an action in *assumpsit*. The unlawful possession made
so by an act of commission by the bailee or agent, was a
process of growth, so that now the person so entrusted
with the possession of the money or goods of another
may make such possession unlawful in his hands by
his own acts, and without a demand by the real owner.
Hence in a civil action to recover possession, it is not.
now necessary in all cases for the owner to make a de-
mand for restitution before suit. And if it be unnec-
essary to plead demand, it is unnecessary to prove a
demand. *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E.
716; *Commonwealth* v. *Hussey* (1873), 111 Mass. 432.

But criminal law is always construed strictly in favor
of those who are accused of disobeying it; and this strict
construction begins automatically with the formal ac-
cusation, the indictment, and blindly follows with its
never ceasing protection to final judgment.

The law in this case may charge the crime, although
the accused has and many have had lawful possession of
the money to the time of his resignation, and before
being indicted. He may have had it deposited safely in
some bank, sound and solvent when the deposit was
made, but bankrupt now; the money may have been
safely placed in a burglar proof safe in his office, and
have been stolen by some one unknown to him and with-
out his fault; a trusted deputy, purloining clerk, or
crafty bookkeeper may have secured the money, and
even now have possession of it; all, much, or part of
it may have been lost in making change across the
counter; checks may have been received in payment of
fees, judgments and cost, which checks were credited as
cash, and receipts in full given for the debt to be paid

thereby, which checks proved to be worthless, by reason of no funds or by forgery. In fact, the accused may not have actually used, converted, or appropriated any of the money, according to the definition of a conversion at common law. In the heat of this discussion now, will the state convict him in the face of these suppositions (although unknown and not proven), is the question proper from the accused.

The growth of the law of embezzlement in this state has been followed closely hereinbefore to lead up to the step now before us. With all the experience which the legislature had in enacting embezzlement into a crime, the latest enactment in 1905, would have been still-born, had it not been for the stream of life given it by the construction of the act of which this is the re-enactment, (Acts of 1883). The law sought to punish by imprisonment in the penitentiary, and accompany this with a fine and disfranchisement without defining such conversion as felonious, but in so doing relied upon the construction given the previous law. *Stropes* v. *State* (1889), 120 Ind. 562, 22 N. E. 773.

The court in the proper exercise of its power, interpolated the word "feloniously" into the section of the statute (Acts 1883 p. 106) which saved the life of the new statute. This action by the court has been recognized for so long a time and in so many cases, and in other criminal laws, other than those defining embezzlement that the discussion of that action will not be resumed here. The parties hereto take it for granted as the law of the case now; so does the court, except for the charge of unconstitutionality.

The statute reads: "And any clerk, * * * so failing to pay over such moneys, and any such successor to any clerk, * * * who shall fail to pay over any such moneys to parties entitled to receive the same, when called on to do so, shall be deemed guilty." Judgment

debtors pay money to the clerk to discharge a judgment due the judgment creditor, and also pay witness' and sheriff's fees; administrators pay money to the clerk for distribution to heirs of their decedent, and for fees to the sheriff, witnesses and publication of notices. The list might be written at great length. What does the section mean by the words: "and any successor to any clerk, * * * who shall fail to pay over any such moneys to parties entitled to receive the same, when called upon to do so?" And what does the section mean by these words: "It shall be the duty of each clerk of the Circuit Court receiving money in his official capacity, at the expiration of his term of office, to pay over to his successor in office all moneys, * * *, to whomsoever due, remaining in his hands at the expiration of such term, * * *; and any clerk, * * *, so failing to so pay over such moneys," etc. The latter words mean that the officer who quits must liquidate to the officer who begins, and that if he does not, he will reap the consequences. Inasmuch as money had been paid to the clerk for different witnesses, distributees, the sheriff, and the publisher, they were entitled to their money forthwith, but the clerk was not required to go out with the money, hunt, find and pay them; he paid them only, "when called upon to do so;" this is what the first group of quoted words mean. Is there need for elaboration? If, in the opinion of the court, there was any doubt about it, the point would be argued further in the same vein. By this reasoning, it must follow that this section of the statute defines two offenses: (1) When the clerk so fails to pay over such money to his successor at the end of his term, and (2) when any successor clerk fails to pay over such money to parties entitled to the same, during his term, when such parties go to his office and call for it. In the first instance, the

law is silent about demand, from the above reasoning; and in the second instance, the party who wants his money must go to the office and ask for it—demand it.

This is the nub of this case. It will settle the motion to quash, the question as to the correct ruling on the two instructions, and the specifications of the motion for a new trial that were argued, save constitutionality, if the decided cases are sufficient foundation for the reasoning and conclusions.

Much has been said in brief and in argument by appellant in this case, that demand must be pleaded and proven in a civil case, when the accused had lawful possession of the money. We reply: In civil pleading, when a conversion is pleaded, no demand need be pleaded, as at the trial, if a conversion be proven, no demand need be proven. The accused cannot profit by his own guilty acts. *Terrell* v. *Butterfield, Exr.* (1883), 92 Ind. 1; *Bunger* v. *Roddy* (1879), 70 Ind. 26; *Nelson, Admr.*, v. *Corwin, Admr.* (1877), 59 Ind. 489; *Jeffersonville, etc., R. Co.* v. *Gent* (1871), 35 Ind. 39; *Robinson* v. *Skipworth* (1864), 23 Ind. 311; *Boyle* v. *Guysinger* (1859), 12 Ind. 273; Chitty, Carriers 91, 131, 132; Story, Bailments §107.

No greater certainty is required in criminal than in civil pleadings. §2034 Burns 1914, Acts 1905 p. 584, §169. *Brunaugh* v. *State* (1910), 173 Ind. 483, 90 N. E. 1019.

By the statute in this case, the time for paying over the money to the successor of the accused is definite and certain. This being the case, the conversion consists in failing to pay over the money at the time specified by the law. Could it be possible that to give this direct statement of the law life, demand must be made by the successor to be, before he is such officer? To demand after the time designated for payment is illogical. If the statute is to be regarded as having any

force, it should be construed to be strong enough to bring under its ban he who is delinquent before it, so that such a one may be sure to pay over on time, without a formality merely of asking him to pay over after he has no use for such funds as an officer; and to wait until the time has elapsed for payment, to make demand, gives to the one so imbued with fraud, time to abscond, and demand is useless. And by what reasoning can it be made to appear that the law is appeased, or that the accused is any more enlightened of the charge against him, by pleading an excuse for failure of demand? The reply should show the unreasonableness of a demand before suit or indictment, when a conversion, or failure to pay over at the certain time which is legally designated. If a plea of conversion can dispense with a demand, then conversion in those cases is the gist of the offense, but conversion must in those cases be proven. Here the legislature changed the wording of the statute from one who unlawfully or feloniously converted to his own use, to one who fails to pay over that which he had lawful possession for a time certain, to the one then legally entitled thereto, his successor. This is the law in civil cases, and it is now the law in criminal cases. *Hollingsworth* v. *State* (1887), 111 Ind. 289, 12 N. E. 490; *State* v. *Mason* (1886), 108 Ind. 48, 8 N. E. 716; *Commonwealth* v. *Tuckerman* (1857), 10 Gray (Mass.) 173; *Commonwealth* v. *Hussey, supra.*

A case in point is *Shook* v. *State, ex rel.* (1876), 53 Ind. 403, where the court says: "When the guardian was removed, his trust expired, and it was his duty to pay over the money of his wards to the proper person without demand;" based upon 2 R. S. 1876 p. 586, §9.

Another reply to appellant's contention that his successor should have demanded him to pay over the money, is that it has been held that the statute is silent as to the making of a demand in this kind of a prosecution,

and that, unless the statute which creates the offense makes a demand and refusal an essential element thereof, it is unnecessary to plead a demand in the indictment, and therefore unnecessary to prove a demand. *State* v. *Mason, supra; State* v. *Ensley* (1912), 177 Ind. 483, 97 N. E. 113, Ann. Cas. 1914D 1306.

The point made by appellant, that to recover from one who has lawful possession of the property of another, the owner must demand possession thereof before suit, obtains in criminal as well as civil law. But when such lawful possession has been changed to an unlawful one—conversion—whether by the act of the one in lawful possession, by misappropriation, matters not, for as soon as such possession becomes unlawful, no demand is necessary before suit in trover. This is well illustrated by a case in Indiana. The accused purchased a horse at a public auction, and after keeping him for some time sold the horse, without any knowledge that the horse had been stolen. The owner of the horse sued the innocent auction purchaser, for the value and recovered. The auction purchaser contended that a demand should have been made upon him before suit, upon the theory that there had been no conversion. The purchaser at auction acquired no property in the horse, and a sale by him amounted to a conversion. The selling of the horse and receiving money in payment was held to be conversion. *Robinson* v. *Skipworth, supra.* In other words, we believe the distinction between larceny and embezzlement is finer than heretofore generally stated. Former statements draw the line thus: In larceny possession is obtained by a trespass, while in embezzlement, the possession was gotten lawfully, and not by trespass. In reality there can be no crime of embezzlement without some unlawful act, termed felonious. And there is a trespass where there is embezzlement. The trespass is in doing that with the property,

theretofore held in lawful possession which is a violation of contract, law or demand.   Conversion rests upon trespass.

In the case at bar there was a trespass in holding the money as an individual instead of holding it as an officer. Such a holding was in violation of the statute under which he, the officer, obtained possession, and therefore a trespass, a conversion.   The law of embezzlement has grown steadily, but slowly, during which time, through the changes and additions enacted by the legislature, and by the construction of the several statutes by the courts, to the same definite end, which is, to punish the offender.   The latest enactment by the legislature, and the latest construction of the law by the courts, need give no innocent citizen fear before the law.   Former statutes defining embezzlement made unlawful detention, unlawful conversion of the goods of another to one's own use, or permitting others to unlawfully convert it to their uses, the crime of embezzlement, under which statutes it was very difficult to prove the elements of offense. The statute now makes the act of omission the conversion, and the crime is established by proving a failure to pay over.   This satisfies the statement in 38 Cyc 2006:   "The essential element of conversion is not the acquisition of the property by the tortfeasor, but a wrongful deprivation of it to the owner."   This also satisfies the holding of this court, that a fraudulent conversion actual or constructive, must be averred.   It may be contended that a failure to pay or to deliver at the time stated in the contract, or as stated in the law, is constructive conversion.   If so, it is supported by abundant impressions of the law.   *State* v. *Nugent* (1914), 182 Ind. 200, 106 N. E. 361; *State* v. *Winstandley* (1900), 155 Ind. 290, 58 N. E. 71.

It has been held by courts of other jurisdictions that such a failure to pay over as provided by the statute,

constitutes embezzlement *per se. State* v. *Ring* (1882), 29 Minn. 78, 11 N. W. 233; *State* v. *Mims* (1879), 26 Minn. 183, 2 N. W. 494, 683.

So the conversion may be the wrongful detention after the expiration of the time of such lawful possession. *State* v. *Nugent, supra; State* v. *Reynolds* (1900), 65 N. J. Law 424, 47 Atl. 644; *People* v. *Goodrich* (1904), 142 Cal. 216, 75 Pac. 796; *People* v. *Ward* (1901), 134 Cal. 301, 66 Pac. 372, in which case a demand would be unnecessary.

It may be stated to be the rule generally. It is not necessary to allege, in an indictment for embezzlement, a demand on and a refusal by the accused to pay over the money or property alleged to have been embezzled, unless the statute creating the offense makes a demand and refusal an essential element thereof. *State* v. *Nugent, supra*; 20 C. J. 474; Ann. Cas. 1914D 1318; *Commonwealth* v. *Kelley* (1907), 125 Ky. 245, 101 S. W. 315, 15 Ann. Cas. 573; *Goodman* v. *State* (1907), 2 Ga. App. 438, 58 S. E. 558; *Hagood* v. *State* (1908), 5 Ga. App. 80, 62 S. E. 641; *State* v. *Hoffman* (1907), 134 Iowa 587, 112 N. W. 103; *Commonwealth* v. *Hussey, supra; State* v. *Journey* (1913), 105 Miss. 516, 62 So. 354; *State* v. *Millard* (1912), 30 S. D. 169, 138 N. W. 366; *State* v. *Mason, supra.*

In a well considered English case, Pollock, Lord Chief Baron, says: "It appears to me that this act of parliament was intended to give the utmost facility in punishing persons guilty of receiving and improperly disposing of money belonging to the crown." *Regina* v. *Moah* (1856), 36 Eng. Law & Eq. 592.

It appears to be the law, that if there had been no conversion, a mere demand would not make it so. Even when stated in the statute, that failure to restore within a time certain after demand, the accused shall be pre-

sumed to be guilty; the only use of such demand was that proof of it was evidence tending to show conversion, and that such a demand was not always necessary. *State* v. *Moyer* (1905), 58 W. Va. 146, 52 S. E. 30, 6 Ann. Cas. 344.

Appellant claims it was error to admit evidence given by the accountants, which tended to show a former misappropriation of public funds by him. · It is not

5. improper to state from reason that guilt can generally be established only by reasonable inferences drawn from the general conduct of the accused. *People* v. *Goodrich, supra.*   Upon this principle evidence of other offenses, or similar transactions to those charged is admissible for the purpose of showing criminal intent.   The admitted evidence complained of showed a conversion in former years of his same term of office, and an admission that he lost the money playing the market on the stock exchange.   This, coupled with the evidence that the accused had not been seen at his office for more than a week before his attorney filed his resignation of the office, that he was arrested in a distant state, was proper evidence for the jury to consider to establish felonious intent.   10 Am. & Eng. Ency. Law (2d ed.) 1033; *Reeves* v. *State* (1891), 95 Ala. 31, 11 So. 158; *Commonwealth* v. *Sawtelle* (1886), 141 Mass. 140, 5 N. E. 312; *Commonwealth* v. *Tuckerman, supra; Kossakowski* v. *People* (1899), 177 Ill. 563, 53 N. E. 115.

Appellant contends that this statute is violative of the Fourteenth Amendment of the Constitution of the United States. · The point made as to the indict-

6. ment is, that while it alleges a felonious failure, that failure can only be felonious, when a demand is made, and the statute omits to define what constitutes the felony.   In answer to this contention the cases relative to a failure to pay over at a time certain, when

the statute fixes the time definitely, hold that a demand is necessary. The accused knew, as a matter of law the exact time he was through with the money as an official and the exact time he should pay it over to his successor. His answer, that he could not pay over the money now, because he had used some of it to pay bills of his own, or that he had loaned some of it to a friend for a few days, and would make it up in a short time is not good. He cannot answer in confession and avoidance. He either did fail to pay over the money or he paid it over, guilty or not guilty, and he availed himself of the latter plea. This put the whole burden upon the state to prove every element of the offense. Two elements necessary to be proved are that the accused received the money and has failed to pay it over as stated in the statute. Is it an element of proof necessary to convict that the state must negative by evidence, that the accused lost the money by the act of God, or if the bank, in which the money was deposited, solvent at the time had since failed? While every element of a crime necessary to convict must be proven by the state, yet it can be seen that the accused might be so proven guilty and convicted under statute, when if he would but have introduced some evidence to contradict, he might save himself from being a victim of the suspicious circumstances that surrounded him. One accused of larceny might, within the law, be proved guilty, convicted and imprisoned, when he could have proved that the circumstance of his presence was as a detective and that another was the thief, and thus by giving the truth to the jury, save himself. With all of the provisions recognized as rules of law to save the innocent, the law frowns when its rules are prostituted to clothe the guilty with innocence. The elements of the crime are clearly stated, no other proof is necessary, save the proof of intent, in support of the felony charged by the statute

in the kind and extent of the punishment. As said by Coffey, J., in *Stropes* v. *State, supra,* at page 567: "For a failure to account to his successor for funds thus wrongfully converted to his own use, we think he would clearly be liable to prosecution and punishment under the statute we are now considering," which was the act of March 5, 1883, Acts 1883 p. 106. If an accused has no funds with which to make the payment over that he correctly owes his successor, under the statute, a demand will not furnish such funds, nor will it be a connecting link to complete the crime, but it may be evidence of the crime, and that is all it will avail. The statute has been enacted since the trial of this, the Stropes case, and the new act was based upon the construction given the former act. In the Stropes case the judgment of the trial court was reversed for failure to charge that the accused feloniously failed to pay over the funds to his successor. In the case at bar the crime is charged as felonious. The statute is held not to violate the Fourteenth Amendment to the Constitution of the United States.

The indictment was good without pleading a demand, and the motion to quash it was correctly overruled; which also answers the second, third and fourth assignment of error.

The record is without error and the judgment is affirmed.

Townsend, C. J., Willoughby, Ewbank, JJ., concur in conclusion.

Myers, J., dissents.