## HART *v.* STATE OF INDIANA.

[No. 27,737. Filed November 5, 1942.]

470

472

*William J. Reed* and *Paul E. Reed,* both of Knox, for appellant.

*George N. Beamer,* Attorney General, *Glen L. Steckley,* Deputy Attorney General, and *John E. Hopkins,* of Rensselaer, for the State.

RICHMAN, J.—All the errors relied upon for reversal of the judgment in this case are presented in the motion for new trial which was filed and overruled after verdict against appellant upon a charge by indictment that as agent he embezzled $25 of the money of Christ Schlarf. Appellant's principal contention is that the court should have given a peremptory instruction of

acquittal because the evidence shows as a matter of law that he was not the agent of Schlarf. Pertinent facts shown by the evidence are as follows:

Appellant was the auditor of Jasper County. He was the son-in-law of William Spurgeon, who owned two tracts of real estate in Jasper County upon which there was a school fund mortgage executed by his predecessor in title in the principal sum of $1,400. Schlarf desired to buy one of these tracts. With his wife and attorney on May 13, 1937, he met Mr. and Mrs. Spurgeon in a room adjoining the auditor's office and there they discussed the details of the agreement. Appellant knew, generally at least, what was transpiring. The agreement was reduced to writing and signed by Mr. and Mrs. Schlarf and Mr. and Mrs. Spurgeon. It provided in substance that the Schlarfs, husband and wife, "parties of the second part," agreed with the Spurgeons to buy one of the two tracts and as consideration to pay the vendor $100 in cash and to assume and pay a $1,400 note and the school fund mortgage, with interest after March 31, 1937. It was further provided that the purchasers would pay "to the Auditor of Jasper County" not less than $25 per month on the principal "and may pay any additional amount of the principal of said note that they may be able to pay, and if the Auditor shall not care to accept these payments, the parties of the second part shall pay the same to the bank in which these papers are placed in escrow, to be delivered to the Auditor at the end of the year each 31st of March." The deed was executed and placed in escrow with a copy of the agreement. The deed also contained a clause by which the Schlarfs assumed and agreed to pay the mortgage. The contract provided for immediate possession. Other provisions are immaterial to this inquiry. Evidently the parties assumed that the

auditor was the officer of the county to whom school fund mortgages were payable and the quoted clause was apparently inserted on their assumption that payments of principal as small as $25 might not be accepted by the auditor.

Schlarf paid $25 cash to appellant and received from him this receipt:

"March 16, 1939

"Received from Christ Schlarf Twenty-Five and no-100 Dollars. Part payment of Principal on Wm. H. Spurgeon Loan.

FRANK M. HART, JR."

The money was not applied to the payment of the mortgage, was not returned to Schlarf, nor paid to Spurgeon. Appellant claims that having been paid by Schlarf in conformity with the terms of the agreement and with no expectation of its return the $25 ceased to be Schlarf's money so that it could not have been embezzled from him.

The treasurer of a county under § 28-235, Burns' 1933, § 6592, Baldwin's 1934, is the only proper person to receive payments on school fund mortgages. Until the money reaches him the mortgage debt and lien cannot be discharged. Without a statutory provision therefor, and there is none, the treasurer may not constitute the auditor as such an agent to receive payment. It is not contended that the treasurer deputized appellant individually as such agent.

Obviously appellant was not himself entitled to the money and must have been acting as agent for another. The agency was either to pay or to receive payment for some principal. If the agency was to receive payment, the treasurer is excluded as principal by the statute, and Schlarf by the fact that he was making the payment, leaving as a possibility only Spurgeon. If appel-

lant was his agent to receive, it must have been because Spurgeon was entitled to the money. But the provisions of the contract are to the contrary. Under its terms Spurgeon was to receive $100, which apparently was paid at the time of execution. None of the $1,400 secured by the mortgage was to be paid either to him or through him to the mortgagee. The receipt above quoted clearly shows that the $25 involved was a payment on the mortgage. Only the treasurer was authorized to receive that payment.

If appellant could not have been acting as agent to receive, he must have been an agent to pay. The case is analogous in this respect to *Sherrick* v. *State* (1906), 167 Ind. 345, 360, 79 N. E. 193, 197, and *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 79, 93 N. E. 213, 219. In the former is this statement:

> "If the insurance companies paid the money to the accused as their agent, or delivered it to him as the voluntary and assumed agent of the State, to be by him paid into the treasury of the State, until the money was paid into the treasury of the State, or there was some notice of acceptance or ratification of the agency by the State, it was competent for the insurance companies to revoke the agency and recover their money from the accused, as for money had and received."

There remains the question: for whom was appellant acting as agent to pay? Surely it was not for Spurgeon because, so far as the record discloses, he was not personally obligated to pay the mortgage. It was a lien upon the real estate he retained and he would have been benefited by its payment, but if not paid, the only detriment to him could be foreclosure of the lien. Even in that event he would be in the position of a surety and could require that Schlarf and Schlarf's real estate first be exhausted, for by the contract of sale the ven-

dees became the primary obligors on the mortgage indebtedness. *Birke et al.* v. *Abbot* (1885), 103 Ind. 1, 1 N. E. 485.

It will be conceded that the $25 was Schlarf's money before he delivered it to appellant. The purpose of its delivery was to pay Schlarf's debt to the mortgagee. Appellant must have been his agent for that purpose. Therefore the money embezzled could have belonged to no one other than Schlarf.

The only case appellant cites as authority for a different view is *Downey* v. *Gifford* (1928), 206 Ia. 848, 218 N. W. 488. If we analyze its facts correctly, it could probably have been put on the ground of novation. The vendor released the vendee's obligation to pay an installment of interest due on a mortgage by accepting a bank's obligation to pay the vendor that installment with interest thereon. When the bank failed, it was the vendor's loss. Examination of other cases cited with the Iowa case on page 1027 of 66 C. J. reveals that they deal with situations where deferred portions of a purchase price were payable to the vendor, so that an intermediary to whom payment was actually made was deemed to be the vendor's agent to receive the money.

It is not contended that in any other respect than on the question of agency the evidence is insufficient to support the verdict. There was no error therefore in overruling the motion for new trial because of the denial of the peremptory instruction, because the verdict was contrary to law or because not sustained by sufficient evidence.

Over appellant's objection evidence was admitted tending to prove that he received other payments from Schlarf and from various other persons indebted on school fund mortgages and appropriated the money to his own use. As indicated from the

statement of facts, *supra,* there was ample independent evidence tending to prove the act of converting the $25 and accordingly evidence that he received and failed to account for other payments was admissible to show a felonious intent. *Collins* v. *State* (1922), 192 Ind. 86, 103, 131 N. E. 390; *Wallace* v. *State* (1932), 204 Ind. 68, 75, 183 N. E. 29, 32; *Springer* v. *State* (1936), 209 Ind. 322, 196 N. E. 97. See 18 Am. Jur. *Embezzlement* § 62, p. 608. The order of proof was within the discretion of the trial court. *Jones* v. *State* (1942), *ante,* p. 384, 43 N. E. (2d) 1017.

It is claimed that the court erred in giving and refusing to give instructions. Appellee says that these alleged errors may not be considered for two reasons, first, because the instructions are not brought into the record by special bill of exceptions and, second, because the motion for new trial does not disclose the grounds of objection to the several instructions. This case was tried under the 1940 Revision of the Rules of this court. Rule 1-7 explicitly negatives appellee's first point. The second is based on cases holding that a question as to the admissibility of evidence will not be considered on appeal unless the motion for new trial sets forth the question, answer if one was given, objection, ruling of the court, and that an exception was reserved. *Brown* v. *State* (1939), 216 Ind. 106, 108, 23 N. E. (2d) 267, 268; *Deming Hotel Co.* v. *Sisson* (1940), 216 Ind. 587, 592, 24 N. E. (2d) 912, 914; *Wise* v. *Curdes et al.* (1942), 219 Ind. 606, 40 N. E. (2d) 122. This rule gradually developed from a dictum in *Greer* v. *State* (1929), 201 Ind. 386, 168 N. E. 581. See 9 Ind. L. J. 149. It has never been applied to instructions. If the practice is to be changed to conform with the reasoning summarized in the Brown case, which, it must be admitted, is applicable to in-

structions as well as evidence, nevertheless the change ought not to operate retroactively. The trial courts and members of the bar are entitled to warning thereof by express rule of this court applying only *in futuro*. We shall therefore consider the errors assigned.

Instruction numbered one tendered by appellee and given reads:

> "You are instructed that one of the essential elements of the offense here charged is that the defendant, Frank M. Hart, Jr., was at the time and place charged, the agent or employee of one Christ Schlarf, and that the defendant, as such agent or employee, received twenty-five dollars ($25.00) belonging to said Christ Schlarf. In determining whether said Frank M. Hart, Jr., was in fact the agent or employee of said Schlarf, as charged, you are entitled to consider all of the evidence concerning any transactions between Schlarf and the defendant, if any, on and prior to March 16, 1939, including their acts and conversations, the fact, if you find it to be a fact, that Schlarf paid the money to defendant, the purpose, if any, for which it was paid to the defendant and any papers or receipts prepared or written by the defendant and given by him to Schlarf."

The objections were that it assumes that Hart was the agent of Schlarf; excludes from consideration other evidence of agency than that mentioned; assumes there were conversations when there was no evidence thereof; and tells the jury that mere payment of money to appellant was a fact which it might consider in determining whose agent he was. The first objection is frivolous. In the reply brief it is claimed that the contract between Schlarf and Spurgeon was excluded from consideration, but we think otherwise for the jury doubtless looked to it to find "the purpose" of payment. There were some conversations between Hart and Schlarf at the times of payments but we find nothing in them that

tends to prove agency. The act of payment commenced an agency theretofore only potential but otherwise was of no probative value on the question of agency. Obviously the contract was the most important if not the only substantial evidence that appellant was Schlarf's agent. The other matters referred to in the instruction were incidental. The instruction was not informative but we do not consider it harmful.

There is no assumption of fact in the first part of appellee's fourth instruction reading: "I instruct you that an essential element of the offense charged in the indictment in this case is a fraudulent intent on the part of the defendant, Hart, to feloniously take, purloin, secrete, appropriate and convert to his own use the money of Christ Schlarf, as charged."

Instructions five, six and seven given at the request of appellee are declarative of the law with respect to the manner of payment of school fund mortgages and the effect of unauthorized payments to the auditor. The first sentence of five is criticized as an invasion of the province of the jury because it states that "evidence has been introduced tending to show that appellant was auditor and that Schlarf was indebted to the school fund." There is no doubt that both facts stated were true. Appellant could not have been harmed by the statement. The latter part of five is a resume of those portions of §§ 28-235, 49-3103 and 49-3104, Burns' 1933, §§ 6592, 5550 and 5551, Baldwin's 1934, which prescribe that school fund loans shall be paid to the treasurer and define his duties upon such payment. It was not confusing but clear. It was applicable to the evidence as excluding appellant's theory below and here that upon payment to the auditor the

money belonged to the county. The same thing is true of instruction six. The seventh reads:

"You are instructed that money paid to a County Auditor by a person owing the county principal upon a School Fund Loan remains the property of the person paying such money to the County Auditor and does not become the property of the County until it is paid to the County Treasurer."

At first blush this instruction would seem to invade the province of the jury by indicating that the money paid by Schlarf remained his money, which was one of the ultimate issues for the jury. But this point is not made by appellant whose sole criticism is that "it was not applicable to the issues" and "did not permit the jury to consider all of the evidence in determining" ownership of the $25. It was no less applicable than five and six. Nor does it purport to exclude consideration of any evidence. Closer scrutiny reveals that it is a correct abstract statement defining generally the effect of an abortive attempt to pay a loan through an official other than the one authorized by law to receive the payment. It does not attempt to bind the jury. Even if it be given the construction indicated at the beginning of this paragraph, we cannot believe that it was harmful for the reason that there was no substantial evidence contradicting the contract between the Schlarfs and Spurgeons. The trial judge correctly stated the legal effect of this contract which was within his province. In a criminal case, where the jury is judge of the law as well as the facts, the court is not precluded from properly stating applicable principles of law so long as it is not "done in a manner calculated to bind the consciences of the jurors or restrict them in their right under the Constitution to determine the law for themselves." *Burris v. State* (1941), 218 Ind. 601, 604, 34 N. E. (2d) 928, 929.

Appellee's sixteenth instruction states in substance that if the State by the evidence has convinced the jury beyond a reasonable doubt of certain enumerated ultimate facts including "that said sum of twenty-five dollars ($25.00) was the property of said Christ Schlarf," it may find the defendant guilty even though no demand was made for the return of the money. Its purpose was to eliminate the question of demand which, as appellant concedes, in this kind of case is unnecessary. *Dean* v. *State* (1897), 147 Ind. 215, 221, 46 N. E. 528, 530. Appellant's only criticism is that the instruction is mandatory omitting one of the essential elements of the offense, namely, Schlarf's right to possession. He relies upon language in the statute upon which the prosecution was based, § 10-1704, Burns' 1933 (Supp.), § 2467, Baldwin's Supp. 1935, which reads in part:

> "Every . . . agent . . . or employee of any person . . . who, having access to, control or possession of any money . . . to the possession of which his employer is entitled, shall, while in such employment, take . . . or in any way appropriate to his own use . . . any money . . . belonging to or deposited with or held by such person . . . in whose employment such . . . agent . . . or employee may be, shall be deemed guilty of embezzlement . . . ."

In the usual case of embezzlement the complaining witness is the owner of the property which he has lost by the embezzlement. "The statutes in most of the states which undertake to define embezzlement require that the subject of the offense shall be shown to be 'the property of another;' which has been almost universally construed to mean that it must be wholly the property of another." 9 R. C. L., *Embezzlement* § 23, p. 1281. There are cases however where a special or qualified property is sufficient to sustain the charge. 29 C. J. S.

*Embezzlement* § 8, p. 676, citing *Davis* v. *State* (1925), 196 Ind. 213, 222, 147 N. E. 766, 770. The statute before us is even broader and permits a charge of embezzlement to be based upon the mere right of another to possession. But the case at bar is not of that type. Schlarf owned the property. His right to possession was a natural incident to and may be inferred from such ownership. Appellant was Schlarf's agent for a particular purpose and had a limited right to possession for that purpose only. Schlarf's right to possession remained paramount. We think therefore that the words "was the property of" included both title and the right to possession. See *Walter* v. *State* (1936), 210 Ind. 310, 318, 1 N. E. (2d) 127, 130. If the prosecution had been based upon a limited ownership, or merely a right to possession of Schlarf, then the instruction as applied to the facts might have been harmful.

Appellee recognized the fact that evidence of other offenses may not be received to establish the fact of misappropriation and therefore at its request two instructions were given, eighteen and nineteen, limiting the probative value of such evidence to the question of intent. The eighteenth instruction is criticized because it refers to "other transactions." Appellant says "other similar transactions or embezzlements might tend to show a felonious intent on the part of the defendant but other transactions cannot." We do not see how the jury could have been misled by the instruction. The court was referring to transactions that tended to prove a felonious intent. There was no occasion for limiting the effect of other kinds of transactions, if any, shown by the evidence.

The first sentence of the nineteenth instruction is: "Evidence has been introduced in this case tending to

show that the defendant Frank M. Hart, Jr., received other sums of money than the one charged in this indictment." Appellant contends that the words "tending to show" are an invasion of the province of the jury as giving the court's view of the effect of evidence. There can be no question that the evidence did in fact show what the court said it tended to show. If the court had been referring to evidence that might or might not tend to show that he received other sums the criticism would be valid. Appellant also claims that the instruction tells the jury that the mere receipt by the defendant of other sums of money is sufficient to show felonious intent. This the instruction does not do. The court continues with a statement that "such evidence is only to be considered . . . in determining whether or not the defendant Hart had an unlawful and felonious intent . . ." By the first sentence the court was directing the attention of the jury to certain evidence and by the second limiting the consideration thereof to the one question of intent. In this connection we think that the fact that appellant, in the office of auditor, received other sums on school fund loans was evidence from which the jury might infer felonious intent. He was required to know under the law that only the county treasurer was entitled to these monies. In accepting them he received something to which he knew he was not entitled except as agent for another. This certainly is evidence to be considered with the other circumstances in the case in determining whether his intent was felonious.

Appellant tendered instructions numbered four, eight, ten and twenty-three, each of which was refused. The fourth would have instructed the jury that the legal effect of the contract between Schlarf and Spurgeon was to make appellant the agent of

Spurgeon. This, as we have already indicated, was erroneous and properly refused. The eighth would have told the jury that the State must prove that appellant "agreed to act as the agent and employee of Christ Schlarf." The only authority cited is Restatement of The Law, Agency, Vol. I, p. 7, Topic 1, where agency is defined as a consensual relationship. Consent to act as agent need not be express but may be implied from his acceptance of the money. It was not a gift nor the payment of a debt to him. By the receipt given at the time of payment he recognized the existence of an agency of some kind and for some principal. The jury might have understood from the instruction that an express written or oral agreement with Schlarf must be proved. In other instructions the jury was told that it must be proved beyond a reasonable doubt that appellant was Schlarf's agent and that he embezzled Schlarf's money. We think under the circumstances that the court was justified in refusing the eighth instruction.

The tenth instruction was too broad. It may have been designed to inform the jury that other embezzlements should not be considered in determining the fact of misappropriation but it stated that they should not be considered "in determining whether the defendant did embezzle the money with which he is here charged with embezzling." The word "embezzle" is not here synonymous with misappropriate but includes both the conversion and the felonious intent. If the evidence tended to prove such intent, it also tended to prove that he did "embezzle." In any event we think the jury was sufficiently advised on the subject by the State's instructions above mentioned.

The twenty-third instruction tendered by appellant and refused attempts to apply the law of reasonable

doubt to the matter of punishment. The last clause thereof reads, "I instruct you to resolve that doubt in his favor and fix that punishment at the least amount of which you are in doubt." "The doctrine of reasonable doubt has no application in the jury's determination as to the penalty to be imposed." 23 C. J. S., *Criminal Law* § 1290, p. 866, 868, citing *People* v. *Krauser* (1925), 315 Ill. 485, 518, 146 N. E. 593, 605. Besides the reasons suggested in that case there is this analogy. In determining the grade or amount of punishment when that function is delegated by statute to a jury it is performing the same function which usually a judge performs after verdict of guilty. It will not be contended that a judge must apply the law of reasonable doubt to the facts he is then considering and there is no greater reason for requiring a jury to be guided by the law of reasonable doubt in determining the punishment. See also I Wharton's Criminal Law (12th ed., 1932) § 80, p. 119, 121. The instruction was properly refused.

Finding no reversible error the judgment is affirmed.

NOTE.—Reported in 44 N. E. (2d) 346.