SPRINGER *v.* STATE OF INDIANA.

[No. 26,351.  Filed May 22, 1935.  Rehearing denied January 7, 1936.]

[redacted]

*Bowers, Feightner & Bowers* and *Gus Condo*, for appellant.

*Philip Lutz, Jr.,* Attorney-General, and *James D. Sturgis,* Deputy Attorney-General, for the State.

ROLL, J.—The appellant was charged by affidavit in two counts in the Huntington County Circuit Court with the crime of embezzlement. The venue was changed to the Grant Superior Court of Grant county. The appellant was convicted of the crime charged.

The first count of the affidavit, omitting caption, is as follows:

"Robert Fryer, being duly sworn on oath says that Elizabeth Springer on the 4th day of March, 1930, at and in said county and state aforesaid, was then and there in the employment of the Board of Hospital Trustees referred to hereinafter and was then and there the duly appointed and acting superintendent of and for that certain county public hospital at and in said county, known as the Huntington County Hospital, which said hospital was previously thereto established by the Board of County Commissioners of said county, and did then and there exist, under and by virtue of the laws of said state, to-wit: Acts 1913, page 742, and Acts 1917, page 527, and acts amendatory and supplemental thereto. That as such superintendent of said hospital the said Elizabeth Springer was then and there and previously thereto empowered, authorized and designated by the duly elected, qualified and acting trustees of and for said county public hospital duly organized and acting as the Board of Hospital Trustees of and for said hospital, to receive, collect and take into her possession, charge

and control lawful money, bills, notes, credits and choses in action, payable to and receivable by and belonging to and under the control of said Board of Hospital Trustees for such county public hospital as compensation for occupancy, nursing, care, medicine and attention furnished by said hospital and was then and there charged and intrusted with the collection, receipt, safekeeping, transfer and disbursement of any and all such lawful money, bills, notes, credits and choses in action which were then and there paid to her by any persons for the purposes aforesaid. That at the time and place aforesaid, said Elizabeth Springer, as such superintendent as aforesaid and by virtue of said superintendency and employment and her authorization and designation to so receive said lawful money, bills, notes, credits and choses in action as aforesaid, did then and there receive and take into her possession from one Sadie Paul, who then and there made such payment for and on behalf of one Melvin L. Paul, who was then and there lawfully and justly indebted to said Board of Hospital Trustees the sum of one hundred thirty-two dollars and seventy-five cents ($132.75), lawful and current money, belonging to said Board of Hospital Trustees as aforesaid and to the possession and ownership of which said Board of Hospital Trustees was then and there lawfully entitled as compensation for occupancy, care, and attention furnished by said hospital, and was then and there and thereby charged and intrusted with the collection, receipt, safekeeping, transfer and disbursement of said sum of one hundred thirty-two dollars and seventy-five cents ($132.75), lawful and current money, so collected and received by her as aforesaid, and which was then and there in her possession and keeping as such superintendent of said hospital and by virtue of her employment and authorization and designation to receive lawful money, bills, notes, credits and choses in action as aforesaid for said Board of Hospital Trustees as aforesaid. That said Elizabeth Springer, while acting as such superintendent of said county public hospital as aforesaid and under her employment and authorization and designation to receive lawful money, bills, notes, credits and choses in action as aforesaid and in possession of said money as aforesaid and charged and

intrusted as aforesaid with its receipt, safekeeping, transfer and disbursement as aforesaid, did then and there unlawfully, feloniously and wilfullly embezzle, convert and appropriate the same to her own use, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The second count of the affidavit is the same as the first except it is alleged that the money belonged to Huntington County.

The affidavit is predicated upon section 2467, Burns Ann. St. 1926, sec. 2464, Baldwin's Ind. St. 1934, and Burns 1933, sec. 10-1701, and is as follows:

"Whoever, being charged or in any manner intrusted with the collection, receipt, safekeeping, transfer or disbursement of any money, funds, securities, bonds, choses in action or other property belonging to or under the control of the state or of any state officer, or belonging to or under the control of any county, civil or school township, city or town, or any officer thereof, converts to his own use, or to the use of any other person or corporation, in any manner whatever, contrary to law, or uses by way of investment in any kind of property, or loans, either with or without interest, or deposits with any person or corporation, contrary to law, or exchanges for other funds except as allowed by law, any portion of such money, funds, securities, bonds, choses in action or other property, is guilty of embezzlement, and, on conviction, shall be imprisoned in the state prison not less than two years nor more than twenty-one years, fined not exceeding double the value of the money or other property embezzled, and disfranchised and rendered incapable of holding any office of trust or profit for any determinate period."

Appellant's assignment of errors is as follows:

"1. The court erred in overruling appellant's motion to quash the first count of affidavit filed against appellant.

2. The court erred in overruling appellant's motion to quash the second count of affidavit filed against appellant.

3. The court erred in overruling appellant's motion in arrest of judgment.

4. The court erred in overruling appellant's motion for a new trial of the within cause."

The first question presented is, Did the court err in overruling appellant's motion to quash the first and second counts of the affidavit? The answer to this question calls for an interpretation of the statute under which appellant was convicted.

The appellant contends that one can only be guilty of embezzlement under the statute who is *charged or intrusted by law* with the collection, receipt, safekeeping, and disbursement of money belonging to or under the control of the State, county or division thereof. We agree with this contention. The appellant further contends that she was not so charged or intrusted by law, and therefore she could not have been guilty of embezzlement. We do not agree with this contention. The appellant cites and relies, to a large extent, upon the case of *Sherrick* v. *The State* (1906), 167 Ind. 345, 79 N. E. 193. At the time of the prosecution of Sherrick there was a law in effect in this state that every foreign insurance company doing business in the state should in the months of January and July of each year report to the Auditor of State the gross amount of all receipts received in the State of Indiana on account of insurance premiums for the six months last preceding and should at the time of making such reports pay into the Treasury of the State the sum of $3.00 on every $100 of such receipts, and for failure to do this a forfeiture was provided to be recovered in the name of the State on the relation of the Auditor of State. A large amount of money from such companies, pursuant to said law, was paid to Sherrick, as auditor, instead of to the Treasurer of State, and, as claimed by the State, at the instance and request of

Sherrick. It is clearly seen that Sherrick, as auditor, was not charged or intrusted by law with the collection of the money. The law specifically provided that the report of the gross amount of all receipts was to be made to the Auditor of State, but that at the time of making the report the amount due to he State was to be paid into the Treasury of State. The court held that Sherrick, as auditor, was not charged or intrusted by law to collect the money from the insurance companies. The court said (p. 357) :

> "Everybody is bound to know the length and breadth of the auditor's authority. The insurance companies, in this instance, when he solicited the money as for the payment of taxes due to the State, were bound to know that he, as Auditor of State, had no right to collect such taxes, and if they elected to pay through him, then for that purpose the auditor was the agent of the insurance companies, and not for the State. . . . Under these statutes there is no ground for saying that appellant, as Auditor of State, was charged or intrusted by law with the collection, and receipt of foreign insurance taxes; and it not being a duty 'enjoined by law,' if he assumed to collect them, his acts were the acts of an individual, and not of a public officer."

Many other cases are cited by appellant to sustain her foregoing contention, among them being *State* v. *Meyers* (1897), 56 Ohio St. 340, 47 N. E. 138; *State* v. *Bolin* (1892), 110 Mo. 209, 19 S. W. 650; *Moore* v. *State* (1897), 53 Neb. 831, 74 N. W. 319. We do not think any of these cases is applicable to the facts in the instant case. In the case of *State* v. *Meyers, supra,* the statute, under which the defendant was prosecuted, was similar to the one in this state, but it did not contain the words, "or in any manner intrusted." Meyers, the defendant, was a deputy county treasurer of a certain county, and was indicted for embezzling funds belonging to said county. The court held that the county treasurer was charged by law with the duty of collecting

and disbursing the public moneys, and doing all acts necessary thereto, as required by law, but that a deputy treasurer was not so charged with the performances of those duties. The court in this case used the following language (p. 349) :

"There may be every reason why a deputy who misappropriates the public moneys should be punished to the same extent that the principal may be, for a like act; and if he can not be under other sections of the statute, adequate legislation to that end should be provided. But the language of section 6841, 'whoever, being charged with the collection of the public money, etc.,' is descriptive of the persons who may be guilty of the offenses it punishes, and is therefore descriptive of the offense; and, under that fundamental rule of strict construction . applicable to all penal laws, a statute defining a crime cannot be extended by construction to persons or things not within its descriptive terms, though they may appear to be within the reason and spirit of the statute."

In the case, *State* v. *Bolin, supra,* the defendant was a justice of the peace, and was indicted for embezzling $200 belonging to the school fund which came into his possession by color and pretense of his office. The statute in Missouri, under which defendant was prosecuted, was somewhat different from the one in the instant case, but it applied to "all public officers, agents and servants of cities, towns, townships and school districts who received public funds for safekeeping, transfer or for any other purpose, or which may be in his possession or over which he may have the supervision, care, control, by virtue of his office, agency or service, or under color or pretense thereof." The court held that the above section did not apply to one who, having no right to the public school money by virtue of his office, obtains possession thereof by falsely representing that he had such right, and that there was no statutory provision in Missouri which gave a justice of the peace the right to col-

lect public school funds of the state, and that he had no right to the money as a public officer, and was not charged or intrusted with it as such.

The case of *Moore* v. *State, supra,* is cited by appellant as a strong authority in her behalf. This case was also cited and the reasoning thereof applied in the case of *Sherrick* v. *State, supra.* The facts are very similar to the Sherrick case. The facts show that Moore was Auditor of Public Accounts of Nebraska. He was charged with embezzling a large amount of money which he had received as fees from insurance companies, and it was charged that said money came into his custody and possession by virtue of his office, and that it was the property of the State of Nebraska. The law, under which he was prosecuted, was similar to that in the instant case. It provided: If any officer or other person charged with the collection, receipt, safekeeping, transfer or disbursement of public money belonging to the state, or to any county or precinct, organized city, or village, or school district, should convert to his own use or to the use of another any of said money he would be guilty of embezzlement. It is to be noted that, as in the statute as applicable in the case of *State* v. *Meyers, supra,* the words "or in any manner intrusted," as found in the Indiana statute, are lacking. In discussing the Nebraska statute in the foregoing case, the court said (p. 836):

"It will be observed that this section refers only to the embezzlement of public money or property, and that it applies only to a particular class of persons—those charged with the collection, receipt, safekeeping, transfer, or disbursement of the public money, or a part thereof. It goes almost without saying that no person is subject to the penalties of the statute unless he falls within the description of the class of persons to whom the statute is applicable. The description of the person against whom

the penalty is denounced is to that extent descriptive of the offense."

It was held that the Auditor of Public Accounts of the State of Nebraska was not, as such officer, charged by law with the collection, receipt, safekeeping, or disbursement of any part of the public moneys, but on the contrary was expressly forbidden to do so, as the statute put this duty upon the state treasurer, and that therefore the defendant Moore was not within the terms of the statute. It was further said in the opinion:

"That where an officer received money which he is not by law authorized to receive, such money is not received by him in his official capacity, and that any duty which he may owe of paying the money is only that which rests upon any debtor or bailee."

Other cases are cited by appellant upon the motion to quash the counts of the affidavit, but none of them presents any principles of law different from those set out in the foregoing cases.

In the case at bar, the section of the statute relied upon for conviction says:

"Whoever, being *charged or in any manner intrusted* with the collection, receipt, safekeeping, transfer, or disbursement of any money . . . belonging to or under the control of any county . . . converts to his own use . . . is guilty of embezzlement."

Does the appellant come within the class of persons thus defined? Was she charged or in any manner intrusted with the collection of money belonging to or under the control of the state or county? We think each of these questions must be answered in the affirmative.

The act under which the hospital was constructed, and organized provided for a board of trustees to be appointed by the county commissioners; the board of trustees was given the power to appoint a superintendent; the superintendent was given the power to appoint and discharge all necessary employees. The act does not

refer to the duties of the superintendent other than as stated above. Section 10 provides as follows:

"Every hospital established under this Act shall be for the benefit of the inhabitants of such county and of any person falling sick or being injured or maimed within its limits; but every such inhabitant or person who is not an indigent shall pay to such board of hospital trustees *or such officer as it shall designate* (our italics) for such county public hospital, a reasonable compensation. . . ."

It was charged in each count of the indictment that the appellant was the duly appointed and acting superintendent of the Huntington County Hospital; that as such superintendent of said hospital she had been and was empowered, authorized and designated by the trustees of said hospital to receive, collect and take into her possession, charge, and control money, bills, notes, credits, and choses in action payable to and receivable by and belonging to and under the control of the Board of Hospital Trustees for such county hospital as compensation for services rendered patients in said hospital and that she was charged and intrusted with the collection, receipt, and safekeeping of said money so received. It is seen that section 10 of the act gives the board of trustees the power and authority to collect compensation for services rendered by the hospital and it also gives said board the power and authority to designate an officer for this duty and "such officer as it shall designate for such county public hospital." The last quoted language would imply, as it seems to us, that the person to be designated would be the superintendent. In any event the board has the power to select a person to collect the compensation, and it is alleged and averred in the affidavit that the appellant was the one so designated. She was the one charged and intrusted by law with the collection and safekeeping of the compensation received as averred in the affidavit. All of the cases cited

by the appellant were cases where the defendants were not charged or intrusted by law with the collection and safekeeping of the public funds.

In the case at bar, however, the statute says, "Whoever, being charged or *in any manner* intrusted . . ." The phrase "or in any manner intrusted" is broad and inclusive. It includes anyone, in our judgment, whether an officer or employee, who is in any manner intrusted with the collection of public funds. It is suggested by appellant, in her brief, that there is another statute applicable to the facts in the instant case, but we do not think so. The one suggested is known as embezzlement by an employee. Why was the statute under consideration enacted? It was surely for the purpose of applying specifically to persons who were charged or in any manner intrusted with public funds. This being its purpose, it is applicable to anyone who is charged and intrusted with public funds, whether an officer or employee, who embezzles these funds. And it cannot be said that the appellant was not intrusted with public funds. Her own evidence admits and concedes this proposition.

The appellant, in specification eight, as a reason for quashing the affidavit, says:

"Inasmuch as the duty of collecting and receiving fees due the board of trustees was not a duty 'enjoined by law' upon the appellant, if the evidence shows such collection and receipt by appellant, it was wrongfully done, and, in her hands, the money was still the property of the person paying the fee and not the money of the board of hospital trustees nor the subject of embezzlement as the property of such trustees."

We think this proposition is certainly erroneous. If a patient paid the appellant, when superintendent of the hospital, for services rendered therein, it certainly cannot be maintained, as a matter of law, that the board

of trustees can again compel payment and especially where, as here, it is charged that the appellant was designated and authorized to accept payment.

We think the counts of the affidavit stated a public offense as defined in section 2467, Burns Ann. St. 1926, section 2464, Baldwin's Ind. St. 1934, section 10-1701, Burns 1933. The court did not err in overruling the motion to quash.

The fourth assignment of error is that the court erred in overruling appellant's motion for a new trial. Specifications 3, 4, 5, 6, 7, 8, 9, and 14 refer to the giving and refusing to give certain instructions. Specification 3 refers to the giving of instructions 1, 2, 3, 4, 5, 6, and 7 by the court. However, under this specification, instruction No. 7 is the only one referred to under proposition E and therefore any objections to instructions 1, 2, 3, 4, 5, and 6 are considered waived. We see no objection to instruction No. 7 and in our judgment the court did not commit error in giving the same.

It is contended by appellant that the court erred in refusing to give instruction No. 5 tendered by appellant. Instruction No. 5 is as follows:

"I further instruct you that the statute relating to the creation and operation of the Huntingon County Hospital defines the duty of the defendant as superintendent, and that such statute does not make it the duty of such superintendent to collect the funds and sums of money due from patients to such hospital, and if you further find that the defendant was not employed for the purpose of collecting such funds nor for the purpose of bookkeeping or keeping accounts relating to such funds, but did, through mere custom, gain mere custody of such funds, then I instruct you that such custody could not form the basis for the offense of embezzlement, and if you find the facts so to be, you should find a verdict for the defendant."

The instruction states that the statute defines the duty of the defendant as superintendent and that it does not make it the duty of such superintendent to collect the funds and sums of money due from patients. This language is misleading. We do not think the statute defines all the duties of the superintendent, and moreover section 10 of the Act specifically gives the board of trustees express authority to designate an officer to collect money for services rendered by the hospital to patients. And it is charged in both counts of the affidavit that the appellant was so designated and appointed as such officer to receive said money and funds and the evidence shows that she did receive money and funds paid by patients to the hospital. We do not think the court committed error in refusing to give said instruction.

Instruction No. 6 tendered by appellant was to the effect that it was the duty of the county treasurer to collect and receive all money due the hospital and this duty to collect and care for the sums of money due the hospital from the patients owing for services cannot be delegated to another person. This instruction is also misleading. Section 10 of the Act specifically provides that a reasonable compensation shall be paid to the board of trustees or such officer as it shall designate for such county hospital. No error was committed in refusing to give this instruction.

Complaint is made of instruction No. 2 given by the court. This instruction states that the appellant was being prosecuted under the section of the statute heretofore set out and the instruction contains the language of the section. It is the contention of the appellant that the charge against the appellant based upon said section shows on its face that the appellant was not and could not be within the offense defined by the statute and that the evidence shows that appellant was merely an employee and not within the

scope of the statute in question. We cannot agree with this contention. We think that each count of the affidavit charges facts sufficient to bring the appellant within the statute, and, moreover, we think it makes no difference whether the appellant was an employee or an officer. The statute says "whoever, being charged or in any manner intrusted with the collection . . . of public funds converts them to his own use is guilty of embezzlement." This language is all embracing and includes all who are either charged or in any manner intrusted with public funds. To give the statute a narrower construction would seem to us to be perverting the very language and purpose of the Act.

The appellant further contends that the court erred in refusing to give instruction No. 2, tendered by the appellant, which is as follows:

"I instruct you that the law presumes the defendant innocent and this presumption attends the defendant step by step throughout the trial of the cause and until the end of the trial unless such presumption is overcome by evidence which convinces each of you beyond a reasonable doubt that the defendant is guilty, and I instruct you that you would not be warranted in a finding of guilty so long as you have any reasonable doubt of the defendant's guilt, and this is true, whether such reasonable doubt arises from the evidence produced or from the lack of evidence sufficient to produce a conviction in your minds that is free from all reasonable doubt."

Appellant contends that it was reversible error to refuse this instruction. She contends that the jury should have been instructed that a reasonable doubt may arise from the evidence or it may arise from a want of evidence. The first part of this instruction is clear and properly states the law, but appellant's complaint is not based on the refusal to give this part of the instruction as this part is fully covered by instruction No. 3, given

by the court on his own motion. Appellant in her brief under her proposition devoted to this instruction says:

"A reasonable doubt may arise or be created by the want of evidence as well as by the evidence produced."

To this proposition she cites the following cases, *Wright* v. *State* (1879), 69 Ind. 163-165; *Batten* v. *State* (1881), 80 Ind. 394-402, and *Parker* v. *State* (1893), 136 Ind. 284-292, 35 N. E. 1105. That this proposition finds support in the decided cases there can be no doubt. If there exists in the mind of the jurors or any one of them at the close of any criminal case, a reasonable doubt of the guilt of the defendant, it is either because of the evidence or because there was a want of evidence. In other words the state has not proven the defendant guilty of the crime charged beyond a reasonable doubt. If the evidence adduced is sufficient to convince the minds of the jurors that the defendant is guilty of the crime charged beyond a reasonable doubt then there is no reasonable doubt in the minds of the jurors or any one of them, arising either from the evidence or from the want of evidence. To instruct the jury that a reasonable doubt may arise from the evidence or from the want of evidence, is only another way of saying that the evidence must be such that convinces the mind of each juror beyond a reasonable doubt that the defendant is guilty of the crime charged. This principal of law was fully covered by instruction No. 3, given by the court of his own motion and reads as follows:

"The defendant in this case has entered a plea of not guilty, to the offense with which she is charged in each count of the affidavit; this plea places upon the State the burden of proving beyond a reasonable doubt every material averment in at least one count of the affidavit before the defendant can be found guilty, and a failure of the State to prove any one of such material facts will entitle the defendant to an acquittal.

"The law in criminal cases presumes the defendant to be innocent of the commission of any crime, and this presumption continues in favor of the defendant throughout the trial and attends her step by step until overcome by the evidence beyond a reasonable doubt.

"It is your duty in this case to give effect to this presumption under the rule above stated and to reconcile the evidence, if you can reasonably do so, upon the theory that the defendant is innocent, and if there remains in your mind a reasonable doubt as to the evidence of any of the several elements of the offense charged you should acquit the defendant; if, however, you find that all the averments of the affidavit have been proven beyond a reasonable doubt, then you should find the defendant guilty of the offense so proven."

It is not available error to refuse a correct instruction if the subject has been fully covered by instructions given. *Ginn* v. *State* (1903), 161 Ind. 292, 68 N. E. 294; *Siberry* v. *State* (1896), 149 Ind. 684, 39 N. E. 936, 47 N. E. 458; *Alyea* v. *State* (1925), 196 Ind. 364, 147 N. E. 144; *Greer* v. *State* (1930), 201 Ind. 434, 168 N. E. 458.

It will be noted that, that part of appellant's instruction No. 2 which she urges should have been given reads as follows:

". . . and this is true, whether such reasonable doubt arises from the evidence produced or from the lack of evidence sufficient to produce a conviction in your minds that is free from all reasonable doubt."

We think the court very properly refused to give this instruction, as the above portion of the instruction to our minds is meaningless. It is, to say the least, misleading and the only effect it could have had, if given, would be to confuse the jury. We find no reversible error in the giving or refusing of instructions.

Under proposition G and under reasons 9, 10, 11, 12, and 13, of the motion for a new trial, the appellant con-

tends that the court committed error in admitting ▮ the evidence of Raymond Smith and M. E. Farmer and several other persons. These witnesses were permitted to testify as to payments made prior to March 4, 1930, and subsequent thereto, including May, 1930. One payment was made in February, 1930. It was contended by the State that these payments were unaccounted for. Part of the payments were made to the appellant and part to others in charge at the hospital. The evidence show that one William Bruner, an accountant, would go to the hospital two and three nights each week, and made up the cash book, and cash journal from information furnished him by the appellant; and the appellant was the only one who reported to Bruner, who was acting as bookkeeper, the amount of funds received. The appellant, as shown by the evidence, had the records of the patients, the time they entered and left the hospital, and the amount due from each for service rendered by the hospital. The evidence further shows that when the appellant was absent from the hospital, and nights when she was not there, money paid in by patients to the nurses or others would be put in drawers in the safe, and also in a drawer called the narcotic drawer, slips of paper or cards would be placed with the money, and from these the appellant would make up her record. From the records of the patients, the number, the time they entered and left, the amount due from them and the amount paid, the appellant must have had actual knowledge of all that these facts showed. If the amount of money on hand, as paid from time by the patients, did not equal the amount as reported and shown owing, then the appellant could have seen that there was a discrepancy. No complaint, however, was ever made by her, as far as the evidence discloses, of this fact.

The witness Raymond Smith testified, and exhibit

No. 4 shows, that he paid $29.10 to the appellant on April 29, 1930; P. E. Amick testified he paid $30.25 to appellant on May 7, 1930, and a receipt was given for this amount; Mrs. Carl Lippencott testified that she paid appellant $25 on May 1, and $25 on May 13, 1930, for services rendered Carl Lippencott; Clifford Rannalls testified he paid appellant $50 on April 7, 1930, for services rendered; Charles McCloskey testified he paid appellant $54.55 April 4, 1930. None of these payments were put on the cash book or accounted for. Some other witnesses paid amounts to nurses in the hospital that were not accounted for, although the appellant had records from which she could have checked up on the same, and the jury had the right to infer from the evidence that appellant purposely failed to account for them. She admitted that the account of $132.75 for which she is accused of embezzling never was put on the cash book, and she further admitted that said sum was paid to her.

The question presented is, Was it error to admit evidences of these payments? The appellant insists that it was, and relies upon the case of *Dampier* v. *State of Indiana* (1921), 191 Ind. 334, 132 N. E. 590, among other authorities to sustain her position. This was a case where it was charged the appellant knowingly received a stolen automobile. The State introduced evidence that the defendant received seven other automobiles, from the same thief, within a period of three months after the date charged. The court said (p. 335):

"The receipt of the seven cars, or even of second car, may have caused appellant to know that the first one was stolen; but this does not prove nor tend to prove, that he had guilty knowledge at the time he received the first. This subsequent knowledge should not be made retroactive."

Accepting this as a correct statement of the law, we do not think it is applicable to the facts in the instant

case. While the receipt of seven or any less number of cars does not prove or tend to prove that one had guilty knowledge at the time he received the first, yet in the instant case the fact that payments unaccounted for were made prior and shortly after the time of the particular charge against the appellant would in our judgment be admissible to show whether or not the appropriation charged was done with an unlawful intent or motive, or with criminal purpose, and pursuant to a criminal scheme to unlawfully appropriate the money of the hospital to appellant's own use. We think the rule as to the admission of such evidence is well settled in this State. The correct rule is stated in the case of *Huffman* v. *State of Indiana* (1933), 205 Ind. 75, 185 N. E. 131. The appellant was charged with issuing a fraudulent check. Evidence was introduced to show that he had issued other fraudulent checks before and after the one charged in the indictment. Objection was made to this class of evidence. This court held it proper evidence, and said (p. 78) :

" 'There is no reason why a court should admit evidence of offenses that are entirely unrelated to the offense for which a defendant is on trial. But we have a different problem when the relation which exists between the other offenses and the one under investigation is such that evidence of defendant's participation in the other offenses is also evidence tending to show that defendant is guilty of the offense charged. . . . We consider that this court has adopted, and correctly so, the rule that evidence of the commission of other offenses is admissible, not only to negative an innocent intent, but also to prove that the defendant committed the act constituting the crime with which he is charged; and this evidence is admissible for the latter purpose either because it tends to identify the defendant as the perpetrator of the offense or because it shows a scheme or plan on the part of the defendant to commit a series of offenses, one of which is the offense in question.' " *Zimmerman* v. *State of In-*

*diana* (1921), 190 Ind. 537, 130 N. E. 235; *Gears* v. *State of Indiana* (1932), 203 Ind. 380, 180 N. E. 585.

The case of *People* v. *Gray* (1884), 66 Cal. 271, 5 Pac. 240, is applicable to the instant case. The defendant was charged with embezzlement. He was a secretary and clerk of the Board of State Harbor Commissioners of California; there were several other clerks connected with this office. The state proved other acts of embezzlement in addition to the one charged. Relative to this evidence the court said (p. 242) :

"It is claimed that no evidence can be introduced on behalf of the people respecting any other crime than that charged, and, as a general rule, such is undoubtedly so; but there are exceptions to this general rule. In the case at bar, the avowed object of the district attorney in introducing evidence of other acts of embezzlement of public moneys by the defendant was simply to prove guilty knowledge and a criminal intent in the appropriation of the $700 described in the information and there are numerous authorities holding that the evidence admitted is competent for that purpose." (Citing many authorities.)

The court further said (p. 243) (and as may be said in the instant case) :

"It appears that there was a clerk and several deputies connected with the office of the secretary or harbor commissioners, and, if but one act of embezzlement had been established by the evidence, it would have been at least a plausible defense for the accused to have made that it was done without his knowledge; but, for the purpose of fixing a guilty knowledge on the defendant beyond the ground of cavil, the prosecution showed a systematic course of embezzlement in the office extending through a considerable period of time, and involving numerous transactions, of which the defendant must have been cognizant. To state the matter in the language of the district attorney, the evidence was admissible for the purpose of rebutting any idea or notion of accident or mistake; in other

words, to show by other similar acts that, in the particular act complained of, there existed a guilty intent to appropriate and convert the people's money to defendant's own use."

The purpose for which this particular class of evidence in the instant case was admitted was correctly set out in appellant's instruction No. 16, tendered and given by the court. The evidence was properly admitted.

It is generally held by courts of last resort that in trials for embezzlement evidence of other acts of a similar character whether before or after the one charged is competent for the purpose of showing a guilty knowledge, and repel the inference of accident or mistake. *People* v. *Molineaux* (1901), 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193; *People* v. *Hatch* (1912), 163 Cal. 368, 125 Pac. 907; *People* v. *Gray, supra.*

We find no reversible error. Judgment affirmed.

Hughes and Tremain, JJ., dissent with opinion.

## DISSENTING OPINION.

HUGHES, J., dissents—I cannot agree with the majority opinion relative to instruction No. 2 tendered by the appellant. I think the instruction as tendered was correct, and that the court committed harmful error in refusing to give it.

It cannot be doubted that a reasonable doubt may arise from the lack of evidence as well as from the evidence, and in many cases it is from the lack of evidence the doubt arises. I think this instruction is particularly applicable in the instant case, and especially when considered in view of the evidence introduced showing other acts of misappropriation than that charged in the affidavit, and the fact that others than the appellant collected money from the patients and also in view of the method of bookkeeping. In none of the instructions of the court was this or a similar instruction given, but

344

on the contrary the court in its instructions Nos. 5 and 7 limited the jury to the evidence introduced. In instruction No. 5 the court used the following language:

". . . You should carefully consider all the *evidence in the case* and you should consider all the facts, if any, that can be rightfully and reasonably inferred from *the evidence and circumstances testified about;* you should not indulge in speculation or conjecture, but should only find such *facts as are established by the evidence in the case."* (Our italics.)

In instruction No. 5 the court said:

". . . If you find from the *evidence introduced before* you . . . it will be your duty to find the defendant guilty and your verdict will so recite. . ." (Our italics.)

The jury has not only the duty to consider the evidence given, but, if there is a lack of evidence on a material fact which raises a reasonable doubt in their minds of the guilt of the defendant, it is also their duty to consider this fact. And this has been the ruling of this court in a long line of decisions.

In the case of *Wright* v. *The State* (1879), 69 Ind. 163, the court, in discussing the question of reasonable doubt, said (p. 165):

"So much of the instructions above set out as limited a reasonable doubt to something which is suggested by, or arises from, or springs out of, the evidence adduced, gave, what appears to us to have been, a too narrow definition of that which is implied by a reasonable doubt. A reasonable doubt may arise from a want of evidence as to some fact having a natural connection with the cause. It has reference to that uncertain condition of the mind which may remain after considering what has not been proven as well as that which has."

In the case of *Densmore* v. *The State* (1879), 67 Ind. 306, the court gave an instruction containing the following language:

"A reasonable doubt is one suggested by, or arising out of, the proof made, and, after a full and fair consideration of all the evidence, pro and con, remains in the mind, causing some degree of uncertainty as to the alleged crime."

The court in passing upon this instruction said:

"It is thus seen that, according to the charge, it is the "proof made' or 'evidence adduced' that is the foundation of a reasonable doubt. This excludes all reasonable doubts that may arise from the lack or want of evidence."

The instruction was held to be erroneous.

In the case of *Ridge* v. *State of Indiana* (1923), 192 Ind. 639, 137 N. E. 758, an instruction was given which undertook to define reasonable doubt, but failed to mention lack or want of evidence as an element thereof, and the court, upon this point, said (p. 646):

"It will be observed that in said instruction the court states to the jury what evidence is sufficient to remove a reasonable doubt, but nowhere in the instructions of the court does the court inform the jury that a reasonable doubt may arise from the want of evidence as well as from the evidence itself."

In the foregoing case the appellant also tendered an instruction containing the identical question as presented by appellant in his tendered instruction No. 2 at bar; and the court held that it should have been given, and that it was harmful in refusing the same, and the case was reversed.

These and many other cases of this court that might be cited all agree on the foregoing statement of the law, and I cannot consent to the proposition that instruction No. 3, as given by the court, covers the proposition of law as contained in instruction No. 2 tendered by appellant. There is a total failure in instruction No. 3 to mention "lack or want" of evidence as an element of reasonable doubt, and, merely, to say, as said in instruction

No. 3, "The defendant in this case has entered a plea of not guilty to the offense with which she is charged in each count of the affidavit; this plea places upon the State the burden of proving beyond a reasonable doubt every material averment in at least one count of the affidavit before the defendant can be found guilty, and a failure of the State to prove any one of such material facts will entitle the defendant to an acquittal"; and, further, as said in said instruction, to say, ". . . if, however, you find that all the averments of the affidavit have been proven beyond a reasonable doubt, then you should find the defendant guilty of the offense so proven," is not equivalent to saying that a reasonable doubt may arise from "the evidence or from the lack or want of evidence."

Neither do I think that that part of instruction No. 2 tendered by the appellant which says that ". . . and this is true, whether such reasonable doubt arises from the evidence produced or from the lack of evidence sufficient to produce a conviction in your minds that is free from all reasonable doubt" is meaningless or misleading, as the majority opinion holds. I cannot see how, or in what manner, it could confuse the jury. It certainly states that a reasonable doubt of the guilt of the appellant may arise from the lack of evidence as well as from the evidence produced, and this is a correct statement of the law.

It was the right of appellant to have a correct instruction given upon the subject of reasonable doubt, and one which did not exclude the element of "lack or want of evidence." This was not done. The one tendered included this element, and should have been given. The decisions of this court have so declared, and I see no reason why, at this time, we should not follow the rule as heretofore laid down. It is based upon sound reason, and should be adhered to. It is of great impor-

tance to a defendant in a criminal case to be properly instructed by the court upon the question of reasonable doubt, and in the instant case this was not done, although the defendant (appellant) tendered a proper instruction which was refused by the court. In my judgment, the rights of the appellant were not properly protected and reversible error was committed in refusing to give instruction No. 2 as tendered by her.

TREMAIN, J.—I concur in the foregoing dissenting opinion.